John M. LANE, dba Lane Guide, Plaintiff,

v.

UNITED STATES POSTAL SERVICE, Marvin Runyon, United States Postmaster General, Defendant.

No. CV–N–95–548–DWH (RAM).

United States District Court, D. Nevada.

Sept. 30, 1996.

Vernon E. Leverty, Matthew L. Sharp, Reno, NV, for Plaintiff.

Kathryn W. Landreth, U.S. Attorney, Shirley Smith, Assistant U.S. Attorney, Reno, NV, for Defendant.

## MEMORANDUM DECISION AND ORDER

HAGEN, District Judge.

This is an action by plaintiff John M. Lane, dba Lane Guide, for reversal of the United States Postal Service's final agency decision denying the Lane Guide second-class mailing privileges. This court has jurisdiction pursuant to 39 U.S.C. § 409.

Before the court are defendant's objections (# 17) to the magistrate judge's Report and Recommendation (# 14) on plaintiff's motion for reversal of order (# 7) and defendant's cross-motion to affirm final agency decision (# 8).

*Magistrate's Report and Recommendation*

Any party may object to a magistrate judge's case-dispositive proposed order, findings, or recommendations. 28 U.S.C. § 636(b)(1)(B); F.R.C.P. 72(b); L.R. 510–2. The district court must make a de novo determination of those portions of the magistrate judge's report to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56. In this case, the parties agree for the purposes of this summary judgment motion that no material factual issues exist. Thus, the issue before the magistrate judge on plaintiff's motion for reversal of order (# 7) (and on defendant's cross-motion to affirm final agency decision (# 8)) and the issue which is now before this court, is essentially an issue of

law for summary judgment; to wit, whether the agency's decision was based on a permissible construction of the statute.

Oral argument was heard on May 24, 1996. On June 13, 1996, after considering the parties' supporting and opposing memoranda as well as their oral arguments, Magistrate Judge McQuaid filed a Report and Recommendation ("R & R") (# 14) on plaintiff's motion for reversal of order (# 7). Judge McQuaid recommended plaintiff's motion be granted. Defendant Postal Service subsequently filed specific objections (# 17) to portions of Judge McQuaid's R & R.

*Rejection of R & R*

Rather than examine the basis for each of the Postal Service's objections in turn, the court rejects the report and recommendation of the magistrate judge and analyzes the issues presented *de novo.* For the reasons set forth below, the court hereby issues this order vacating the decision of the Postal Service and remanding for further proceedings consistent with this opinion. Therefore, plaintiff's motion for reversal of order (# 7) and defendant's cross-motion to affirm final agency decision (# 8) are denied.

*Standard of Review; Deference to Agency Interpretation*

Plaintiff challenges the decision of the Postal Service denying Lane Guides second-class mailing rates. The agency decision was based solely on the agency's determination that the Lane Guide is not a periodical within the meaning of the applicable postal rule, Domestic Mail Manual (DMM) 422.1(a).

*Chevron Deference*

A threshold question for the court is the amount of deference due to the agency's decision. In *Chevron v. Natural Resources Defense Council,* the Supreme Court set forth a two-part test to be applied whenever a court is reviewing an agency's interpretation of the statutes it administers. 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If Congress has spoken to the precise question at issue, i.e., if Congress's intent is clear, the court and the agency must give effect to

that intent. If Congress's intent is not clear, either because Congress inadvertently did not resolve the issue, or because Congress intentionally left it to be resolved by the agency charged with the administration of the statute, "the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Id.* at 842–843, 104 S.Ct. at 2781–2782. Rather, the court must uphold the agency's interpretation if it is "based on a permissible construction of the statute." *Id.* In other words, the agency interpretation is upheld unless it is arbitrary or capricious. *Deukmejian v. United States Postal Service,* 734 F.2d 460 (9th Cir.1984).

The rationale behind the *Chevron* rule is that where Congress has delegated a policy decision to an agency, separation of powers concerns make it inappropriate for a court to substitute its judgment for that of the agency. *Id.* at 865–866, 104 S.Ct. at 2792–2793. The *Chevron* court emphasized that judges "are not part of either political branch of the government" and "have no constituency." *Id.* "While agencies are not directly accountable to the people, the Chief Executive is, and it is entirely appropriate for this political branch of the government to make such policy choices—resolving the competing interests which Congress itself either inadvertently did not resolve, or intentionally left to be resolved by the agency charged with the administration of the statute in light of everyday realities." *Id.*

However, "[t]he two-step test in *Chevron* test applies only to the meaning given a statute by an agency to whom Congress has delegated the !power to make binding policy decisions when that agency uses the procedures Congress has authorized it to use for that purpose." Kenneth Culp Davis, *Administrative Law Treatise,* Third Ed., 1994, Vol. I, § 3.5, p. 122. For example, the highly deferential Chevron test is applicable to legislative rules subject to the notice and comment provisions of the federal Administrative Procedure Act[1], but not to an agen-

---

1. Although the Postal Service is not subject to the notice and comment requirements of the Admin-

istrative Procedure Act, *see* 39 U.S.C. § 410, the rationale behind this qualification of the *Chevron*

cy's own interpretive rules, internal guidelines, letters, manuals, and briefs. Davis, Vol. I, §§ 3.5 and 6.3, p. 120, 234–236. *See also* Robert Anthony, *Which Agency Actions Should Bind Citizens and Courts?*, 7 Yale J. Reg. 1 (1990).

The United States Postal Service is an independent executive branch agency to whom Congress has delegated policy-making authority. 39 U.S.C. § 201. Congress delegated to the Postal Service the authority to develop, by promulgation of rules and regulations, mail classifications and rates. 39 U.S.C. §§ 401(2), 3621, 3623, 3626. Although the statute, by mandating that certain specified types of publications shall be designated second-class mail, *see* 39 U.S.C. § 3626(b)(1), gave some guidance to the agency, it left considerable discretion to the Postal Rate Commission to classify different types of mail. *See* 39 U.S.C. § 3623.

■ However, once the agency exercised its discretion to classify by promulgating the series of regulations comprising the Domestic Mail Manual (DMM), the agency was bound by that expression of policy. *Dyniewicz v. United States*, 742 F.2d 484, 485 (9th Cir.1984). In 1981, the Postal Service enacted DMM 421.1(a), a regulation defining, for the guidance of postal employees and the public, the attributes of periodical publications. *See* DMM 421.1(a); 45 F.R. 73518, 73519. *See also* 39 C.F.R. § 211.2(a)(2) (Postal service regulations include the DMM). Second-class mail applicants are entitled to rely on this expression of the agency's policy. Here, the Judicial Officer found that Lane Guides complied with the technical requirements of that regulation; however, the Judicial Officer further held that such compliance was insufficient; under *Houghton v. Payne*, a publication must also be a periodical within the ordinary meaning of the term.

The imposition of this additional requirement by an adjudicatory body empowered to administer a regulatory scheme was error.

*Interpretation v. Rulemaking*

The stated basis for the agency's decision was its finding that the Lane Guide does not qualify for second-class status under DMM 421.1(a) [2] Finding that each issue is merely an update to the original directory materials provided to each subscriber, the Postal Service concluded the Lane Guide is more like a book than a periodical, and therefore not entitled to second-class rates. The Postal Service cited the Supreme Court's decision in *Houghton v. Payne*, [194 U.S. 88] 24 S.Ct. 590 [48 L.Ed. 888] (1904), for the proposition that publications must not only meet "technical statutory requirements" but must also be a periodical in the ordinary meaning of the term.

■ *Chevron* requires deference to reasonable agency interpretations of statutes and regulations within their realm of authority. When an agency construes its own regulation, deference is "even more clearly in order" than when it construes a statute. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). However, the deference due an administrative interpretation of an agency regulation depends not only on its consistency with earlier agency pronouncements, but also with the purpose and wording of the applicable regulations and statutes. *Deukmejian v. United States Postal Service*, 734 F.2d 460 (9th Cir.1984). Furthermore, the weight given to an agency interpretation should depend, in part, on the thoroughness of its reasoning. *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

principle is equally applicable to the Postal Service.

2. This rule states, in pertinent part:
 A periodical is a publication which is published at a stated frequency with the intent to continue publication indefinitely. The primary distribution of each issue must be made before that of each succeeding issue. The primary purpose of a periodical must be the transmission of information. A periodical may consist of original or reprinted articles on a single topic or variety of topics, listings, photographs, illustrations, graphs, a combination of advertising and nonadvertising matter, comic strips, legal notices, editorial material, cartoons, or other subject matter. A periodical must also exhibit continuity from issue to issue. Continuity may be evidenced by serialization of articles or by successive issues carrying the same style, format, theme or subject matter.

Here, by reading *Houghton* into the regulation, the Judicial Officer essentially amended the regulation. No deference is owed where an adjudicative body acts outside of its proper authority.

 The addition of the *Houghton* "ordinary meaning" requirement was an arbitrary construction of the regulation. The introductory language of DMM 421.1(a) states, in relevant part,

For second-class mail purposes, a periodical publication is defined as follows:

Where a definition is so introduced, it is clear that the definition which follows is meant to be a comprehensive one. The legislative history of the rule confirms that it was indeed intended to be comprehensive.[3] An agency may not interpret its regulations in a manner so as to nullify the intent or wording of a regulation. *Bahramizadeh v. United States I.N.S.*, 717 F.2d 1170, 1173 (7th Cir.1983). The agency is bound by its own regulations. *Id.* The addition of any additional requirements, especially one as ill-defined as the one applied by the Judicial Officer here (publication must be a "periodical within the ordinary meaning of the term"), to a regulation clear and comprehensive on its face, nullifies both the wording and intent of the regulation and is not only unreasonable, but arbitrary.

The court acknowledges the line of Postal Service authority, represented by cases such as *ABL–CLIO, Deadline Data,* and Prentice Hall [4] denying second-class mailing privileges to looseleaf services. Furthermore, the court recognizes that the factors emphasized by the Postal Service in those cases are present in this case. According to the parties' joint stipulated materials, and the record before the court, the facts establishing Lane Guides as a looseleaf publication similar to those in *ABL–CLIO, Deadline Data,* and *Prentice Hall* are undisputed [5].

 The court also acknowledges that departure from agency precedent can itself be an abuse of discretion, if the reasons for doing so are not adequately explained. *See, e.g., Atchison, T. & S.F. Railway v. Wichita Board of Trade,* 412 U.S. 800, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973). However, where, as here, an administrative tribunal mechanically adheres to its own precedent [6] even after implementation of a comprehensive regulation dealing with the precise question at issue, it is the failure to depart from that precedent which requires reasoned explanation. The court can find no authority for the power of the agency's adjudicative arm to impose an unwritten requirement on second-class mail applicants in addition to the requirements set forth by the rulemaking arm in the clear language of DMM 421.1(a).

If the Judicial Officer had based its decision on a permissible construction of the postal regulations, he would have been well within his delegated authority and his decision would be entitled to considerable deference under Chevron. The portion of the regulation "construed" by the Judicial Officer, read in the context of the entire regulation, could well be interpreted to reach the same result reached by the Judicial Officer in

---

**3.** The summary published in the Federal Register states, "This final rule amends section 421.1 of the Domestic Mail Manual to establish an administrative definition of the term 'periodical publication' as that term is used with regard to second-class mail eligibility." 46 F.R. 15266.

**4.** *ABL-CLIO, Inc.,* P.S. Docket No. 23/28 (I.D. Jan. 21, 1987); *Deadline Data, Inc.,* POD. Docket No. 1/149 (I.D. Aug. 28, 1959; P.S.D. Nov. 5, 1959); *Prentice–Hall, Inc.,* P.S. Docket No. 4/79, 80 (I.D. May 20, 1976; P.S.D. Sept. 16, 1977).

**5.** These facts are as follows. Lane Guide is a lender, creditor, and banking directory, which is received in its current complete form by the subscriber. The subscriber is provided with a looseleaf binder with dividers, and pre-punched directory pages. New Lane Guide subscribers receive a complete text initially, and bimonthly update issues thereafter. The updates are pre-punched to allow for easy replacement of designated outdated portions of the directory. The pages in each bimonthly issue are paginated in a manner consistent with insertion into the complete text. Replacement pages sometimes start in the middle of a lender's listing. The publisher describes the bimonthly issues as "updated issues", "updated supplements", and "replacement pages". The subscriber is instructed to discard the outdated portions of the directory.

**6.** The court here refers to the above-cited Postal service cases relying in part on the *Houghton* "ordinary meaning" rule.

this case[7]. However, as discussed above, the court finds the Judicial Officer's opinion in this case to be less an interpretation or construction of the regulation than an unauthorized amendment of it.

The court finds the decision of the Postal Service denying second-class mail privilege to Lane Guides to be an unreasonable and arbitrary interpretation of Postal Service regulations. The decision is vacated and the case is remanded to the Judicial Officer for further proceedings consistent with this opinion.

**IT IS ORDERED** that the report and recommendation (# 14) of the magistrate judge is rejected. Defendant's objections (# 17) are overruled as moot. Plaintiff's motion for reversal of order (47) and defendant's cross motion to affirm final agency decision (# 8) are *DENIED*. The opinion of the Postal Service is *VACATED* and the case is *REMANDED* for further proceedings consistent with this opinion.

---

7. For example, DMM 421.2 specifically provides that looseleaf services concerning developments in the law and public policy are to be considered periodicals for second-class mail purposes. *See* *also* 39 U.S.C. § 3626(b)(1)(B) and DMM 421.1(b)(2). The negative implication is that other looseleaf services are not considered periodicals.